HEARD APRIL TERM, 1872.

GAGE *vs.* CHARLESTON.

The decision in *Copes* vs. *Charleston*, 10 Rich., 491, that the City Council of Charleston has the power, under the city charter, to subscribe to the stock of railroad companies within and without the State, and tax the inhabitants of the city to raise money to pay the subscriptions, sustained upon the principle of *stare decisis*.

BEFORE GRAHAM, J., AT CHARLESTON, APRIL TERM, 1872.

Action by Alva Gage and seven other named persons, " inhabitants and property holders of the city of Charleston, for themselves

and others, inhabitants and property holders of said city," plaintiffs, against the Mayor and Aldermen of the city of Charleston, constituting a corporation known as the City Council of Charleston, John S. Riggs, John Phillips and George I. Cunningham, defendants.

The complaint alleged:

*First.* That the plaintiffs are inhabitants and property holders of the city of Charleston, and that the said City Council are a body corporate by Act of the General Assembly of said State, ratified the 15th day of August, 1783, and altered and amended by Acts subsequent thereto, which said Act and amendments appear in the Ordinances of the city of Charleston, published in 1844, and here shown to the Court.

*Second.* That by the said Act and amendments the said body was appointed to the office of municipal government in said city. That the functions of said office are specifically indicated, in said Acts and amendments, to be the charge· of streets, lanes, public buildings, workhouses, markets, wharves, public houses, carriages, wagons, carts, drays, pumps, buckets, fire engines, the poor, the seamen, disorderly people and negroes; and therein they are vested with the power to make such by-laws and regulations as shall appear to be requisite and necessary for the security, welfare and convenience of said city, but without express power to take, hold or create for itself a corporate capital, without the designation of any commercial object upon which a corporate capital could be expended; without express power to make investments of individual capital, or to borrow money, or to make any form of security for the performance of any moneyed obligation, or to raise money in any form whatever, but by assessments on the inhabitants of Charleston, and those holding taxable property therein, nor by assessment, but for the safety, convenience, benefit and advantage of the said city.

*Third.* That under the said Act and amendments, the City Council for the time being of said city, at various times from the year 1818, to within a period shortly preceding the filing of this complaint, transcending their office of municipal government, have assumed large obligations to objects not indicated in the said Acts, and to meet these obligations have issued securities or acknowledgments thereof, in the form of stock, whereon they have borrowed large sums of money, which sums of money it is declared in the said stock, that at distant dates and with certain rates of annual interest, shall be paid by the said city of Charleston.

*Fourth.* That of the obligations to which these several securities have been issued, some have not been specifically indicated, and a very large part have been declared to be in the construction of certain railroads, some beyond the limits of the State of South Carolina, and all beyond the limits of said city of Charleston, and beyond the jurisdiction of the said municipal body, as follows :

1st. In the year A. D. 1837, to the Louisville, Cincinnati and Charleston Railroad, by way of an investment in the stock thereof, $700,000, bearing interest at the rate of 5 per cent. per annum. Also, in the same year, by way of loan thereto, $100,000, with like interest, which said road was intended to commence at Branchville, in the State of South Carolina, and extend through the State of Tennessee to Louisville, in the State of Kentucky.

2d. In the year A. D. 1850, to the Nashville and Chattanooga Railroad, $500,000, interest 6 per cent. A road commencing at Nashville, in the State of Tennessee, and extending to Chattanooga, on the Tennessee River.

3d. In the year 1853 to certain other Railroads, to wit: the Blue Ridge Railroad, the Northeastern Railroad, the Cheraw and Darlington Railroad. The first of which roads was to extend from Anderson, in this State, through Georgia and North Carolina, to Knoxville, in the State of Tennessee, and the last from Florence to Cheraw, in this State; and also to certain public expenditures, $1,000,000.

4th. In the year A. D. 1854, to the Northeastern Railroad, a road extending from beyond Charleston to Florence, in the State of South Carolina, $150,000, interest 6 per cent.

5th. In the year 1854, to the Memphis and Charleston Railroad, a road extending from Chattanooga, Tennessee, through parts of Alabama and Mississippi, to Memphis, in Tennessee, $250,000, interest 6 per cent.

6th. In the year A. D. 1855, to the Blue Ridge Railroad mentioned above, $400,000, interest 6 per cent.

7th. In the year 1856, to the Blue Ridge Railroad mentioned above, and the Charleston and Savannah Railroad, a road beyond the limits of Charleston to Savannah, in the State of Georgia, and to other purposes, $1,163,055, 6 per cent. interest.

*Fifth.* That the said municipal body is the creature of its said charter of incorporation, and can exercise no power not conferred on it by its charter ; and cannot exercise the powers conferred on

it by its charter in any other form than is therein specifically in-
dicated ; and in assuming powers not conferred by its charter, and
proceeding upon forms not warranted therein, its acts are null and
void, and utterly without the efficacy to charge the inhabitants and
holders of property of the said city ; and ' that the construction of
railroads beyond the limits of the said city is not an object indicated
in the charter, and it is not vested with power to issue any such se-
curities as aforesaid ; and in entering into obligations to the con-
struction of said railroads, and the executing such securities for
moneys applied, or pretended to be applied, to those or to any other
objects, not within the office of said municipal body, the said body
has broken the trusts of its office, and therein has not imposed a
charge for the payment of either the principal or interest of such
securities upon the plaintiffs, and others, inhabitants of said city
and holders of property therein, as aforesaid.

*Sixth.* That of the said securities so issued to the construction of
railroads, as aforesaid, some are outstanding in their original form,
and some have been funded under provisions of an ordinance rati-
fied August 11th, 1857, to arrange the time for the payment of the
city debt, for which, in exchange, other securities in the form of
stock were then issued, but are of the securities to the objects afore-
said, in their original or altered form, and are still outstanding in
the hands of persons who assert these are valid claims upon the said
City Council, and through that, upon the property of these plain-
tiffs and others.

*Seventh.* That these securities constituted originally much the
largest portion of the debt claimed against the city, and they have
been much increased by other issues of like securities under recent
ordinances providing for the funding of interest thereon, which had
come to be largely in arrear.

*Eighth.* That these securities, so issued as aforesaid, are now af-
firmed by the said defendants, the City Council, as existing and
valid obligations upon said city ; and as such they have claimed to
take the property of these plaintiffs and others, by assessment, for
the payment of the interest thereon as it accrues, and the principal
as it may fall due ; and they have actually collected large sums of
money of these plaintiffs, which they now propose to pay to the
holders of said stock ; and they propose to assess and collect still
other sums to that object, as occasion may require. All of which
the plaintiffs say is a breach of the trusts of that municipal office

for the benefit of these plaintiffs and others, to which the said body is committed by its charter of incorporation aforesaid.

*Ninth.* That these plaintiffs and others have not been consulted by said body in the obligations so assumed, and securities so issued; that they have not assented to the imposition of any such charge upon them, or taken any benefit or advantage therefrom; that the transactions to the said investments in railroads, and to the said securities asserted to have been issued thereto, have been between the said City Council, for the time being, and others, parties unknown to these plaintiffs; that the charge upon these plaintiffs to the said securities so issued as aforesaid, amounts to very nearly one-half the value of all the property held by these plaintiffs, and others, within the limits of the said city; and the plaintiffs, not participating personally or by procuration in the said transactions, out of which this charge arises, have had no chance of answer or defence, but are liable at any instant of delay in the payment of the sums exacted, to execution upon their property; and without this, irreparable injury to result from such powers of execution, can assert their rights in no other form against this most unwarrantable exaction.

*Tenth.* That the holders of the said stock so issued by the said City Council, in breach of trust as aforesaid, are very numerous. That they are not all known to the plaintiffs, and if known, could not practically be made parties to this bill; but that of those holding said stock, are John S. Riggs, John Phillips and George I. Cunningham, who stand in the same rights as all other holders of said stock, and who, for themselves and others, are charged to defend the matters alleged in this complaint.

Wherefore the plaintiffs pray judgment:

1. That the said defendants may answer the premises, and show what stock has been so issued, what portion thereof is outstanding, and in whose hands the same may be; and the facts appearing as stated in this complaint, that the said City Council did not have power under said charter to bind by such securities to such objects the property of these plaintiffs.

2. That the defendants, the City Council, be enjoined from collecting further funds of these plaintiffs, by assessment, to the payment of the principal or interest of such securities as have been issued to railroads as aforesaid, or of such as have been issued to the interest in arrears thereon; and also from issuing further securities to such arrears of interest, and that they be enjoined from paying

any funds collected of these plaintiffs, and others, to the interest accruing on said securities.

The City Council demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action. Phillips and Cunningham severally answered, and plaintiffs demurred to the answers, because the facts therein stated are insufficient to constitute a defense.

His Honor the Circuit Judge held that the questions involved in the case were concluded by the decision in *Copes* vs. *Charleston*, (10 Rich., 491,) and the Act of 1854, (12 Stat., 375,) and it was ordered and adjudged that the demurrer of the defendant, the City Council, be sustained, and the summons and complaint be dismissed with costs.

The plaintiffs appealed.

*Brewster, Spratt & Burke, Cohen,* for appellants, (*a*).

*Corbin, City Attorney, Phillips, J. Y. Simons,* contra.

Aug. 14, 1872. The opinion of the Court was delivered by

Moses, C. J. We have considered with much interest the argument of the learned counsel for the appellants. It evinces industrious research and elaborate investigation, and brings to bear upon the motion, in a strong and terse form, every possible reason that could be urged in its support. Regarding the point made, as directly decided by the case of *The State ex rel. James Copes* vs. *The Mayor and Aldermen of the City of Charleston*, (10 Rich., 491,) we have rather held it our duty to consider, whether any controlling policy has been shown, which should induce us to overrule it. A decision which has been accepted and conformed to for over fifteen years—made, too, by the unanimous concurrence of the Court of Errors, composed of all the Chancellors and Judges of the State, should not be disregarded, unless the necessity for its reversal is clear and apparent. Relying on its authority, the public has dealt with the securities to which it referred, as valid and binding on the City Council of Charleston, and now to declare them issued without the sanction of law, would deluge the State with a flood of litigation, the consequences of which would affect it for at least a half

---

(*a*) As the case went off on the simple point, that the principles involved are settled by a previous decision, it would seem to be out of place to insert the arguments of counsel. Though able, learned and interesting, they add nothing to the value of the case as an authority.                                                    R.

century. Not only the wealthy capitalist, but the poor widow and orphan, who, by the faith reposed in the said decision, invested their all in these stocks, would feel the heavy blow which a decision against the validity of the ordinances under which they were issued would inflict.

If, in overruling an ordinary case made in a State Court by Judges who preceded those who have now the honor of occupying the places which they long held with so much credit to themselves and satisfaction to the country, the utmost deference should be extended, and the greatest caution exercised to ensure a correct conclusion, how certain and satisfactory should be our conviction, before we ventured practically to set aside an authority, on the faith of which so many important engagements and contracts have been made. Even if our legal judgment differed from that pronounced in the said case, looking to the disastrous pecuniary consequences which would follow, we would not, under the circumstances, feel ourselves justified, in any adjudication tending to its reversal, without a judicial necessity which could not be avoided. Stability in the law is of public consequence. A case depending on similar facts, should be decided by the one that has preceded it. If law depended upon principles, there can be no difference in their application to like cases. It is said in Ram. on Legal Judgment, 114, " A reason constantly adverted to as a ground on which to adhere to a former decision, is the importance of certainty in the law. Another reason is the great importance that there should be an uniformity of decision in the different Courts of Westminster Hall. A third reason is the probability that many transactions have taken place upon the footing of the former decision." Lord Kenyon, in *Schumann* vs. *Wetherhed*, 1 East, 541, said, " I should be sorry to see one decision in 1798, and a different decision on the same facts in 1801 ;" and in Ram., 33, 34, a reference may be found to the many cases where a rule that has become settled law has been adhered to, although inconvenience has followed its observance, or it has been enforced although another rule may appear upon general principles more reasonable and more just.

Our American commentator, Chancellor Kent, second to none of the modern jurists—one whose learning has contributed to the elucidation of the general principles of the law, and whose decisions are referred to as the great lights by which those who have succeeded him in the administration of justice are to be guided—in the 21st Chapter of his work, in the strong but concise language peculiar to

32

him, bears his own testimony to the importance of adhering "to a solemn decision as the highest evidence which we can have of the law applicable to the subject." Recommending what he there says, and adopting it as the rule by which we must be here governed, we cannot forbear to quote the following from his expressions, applicable to the point on hand: "If judicial decisions were to be lightly disregarded, we should disturb and unsettle the great landmarks of property. When a rule has been once deliberately adopted and declared, it ought not to be disturbed, unless by a Court of Appeals or Review, and never by the same Court, except for very cogent reasons, and upon a clear manifestation of error; and if the practice were otherwise, it would be leaving us in a state of perplexing uncertainty as to the law. The language of Sir William Jones is exceedingly forcible on this point: 'no man,' says he, 'who is not a lawyer would ever know how to act, and no man who is a lawyer would, in many instances, know what to advise, unless Courts were bound by authority as firmly as the Pagan Deities were supposed to be bound by the decrees of fate.'"

It is ordered that the motion be dismissed.

*Willard,* A. J., and *Wright,* A. J., concurred.